**Entered on Docket**
**February 07, 2014**
**EDWARD J. EMMONS, ACTING CLERK**
**U.S. BANKRUPTCY COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

**Signed and Filed: February 7, 2014**



_____
**DENNIS MONTALI**
**U.S. Bankruptcy Judge**

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re | ) Bankruptcy Case |
| | ) No. 11-31376DM |
| HOWREY LLP, | ) |
| | ) |
| Debtor. | ) Chapter 11 |
| _____ | ) |
| ALLAN B. DIAMOND, Chapter 11 | ) Adversary Proceeding |
| Trustee for Howrey LLP, | ) No. 13-3056DM |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| HAYNES AND BOONE LLP, | ) |
| | ) |
| Defendant. | ) |
| _____ | ) |

MEMORANDUM DECISION ON MOTIONS TO DISMISS

I.  INTRODUCTION

Plaintiff Allan B. Diamond, Chapter 11 Trustee ("Trustee") for debtor Howrey LLP ("Debtor"), filed multiple nearly identical complaints for avoidance and recovery of actual and constructive fraudulent transfers and for an accounting and turnover and other relief, seeking to recover from several law firm defendants the value of profits received by them with respect to unfinished business that previously had been handled by Debtor.  Trustee contends that a prepetition waiver of Debtor's interest in profits

-1-

realized or to be realized from its unfinished business ("Howrey Unfinished Business") constituted a fraudulent transfer. On October 23, 2013, the court held a hearing on motions to dismiss (collectively, the "motions") filed by nine of these defendants.[1] Having considered the motions, the oppositions and the arguments of the parties, the court will grant the motions in part and deny them in part, although Trustee will be given leave to amend the complaints in some respects.[2]

As this court has previously held when applying California law, the unfinished business of a law partnership is any business covered by retainer agreements between the firm and its clients for the performance of partnership services that existed at the time of dissolution. *Greenspan v. Orrick Herrington & Sutcliffe (In re Brobeck, Phelger & Harrison LLP)*, 408 B.R. 318, 333 (Bankr. N.D. Cal. 2009)("*Brobeck*"), citing *Rosenfeld, Meyer & Susman v. Cohen*, 146 Cal. App. 3d 200, 217, 194 Cal. Rptr. 180 (1983). It does not, however, extend to business created after dissolution, even if that business comes from a client of the dissolved firm.

---

[1] By the time of the hearing three defendants had settled, leaving for argument and decision motions in the following six adversary proceedings: 13-3056 (Haynes & Boone LLP); 13-3057 (Neal, Gerber & Eisenberg LLP); 13-3060 (Kasowitz Benson Torres & Friedman LLP); 13-3093 (Jones Day LLP); 13-3094 (Hogan Lovells US); and 13-3095 (Pillsbury Winthrop Shaw Pittman LLP).

Three defendants initially filed separate motions to dismiss, then joined with three others in a joint motion to dismiss. Three other defendants filed separate motions to dismiss. The six adversary proceedings have not been consolidated. This Memorandum Decision is being filed in each of the six adversary proceedings, with changes only in the caption. Orders disposing of the motions will be separately filed in each of those six actions.

[2] While some defendants argued issues that others did not, the court deals with all issues as though they had been raised in all motions by all defendants.

-2-

*Brobeck,* 408 B.R. at 333. The entitlement of partners to recover profits from a dissolved law firm's unfinished business (the "Unfinished Business Rule") is well-established under California law. *Id.*, citing *Jewel v. Boxer*, 156 Cal. App. 3d 171, 203 Cal. Rptr. 13 (1994) ("*Jewel*"). Here, Debtor's partnership was governed by the laws of the District of Columbia ("D.C."), and thus this court must apply D.C's law. For the reasons set forth below, the court concludes that D.C. law pertaining to the Unfinished Business Rule is similar to that of California.

II. ISSUES

   **A. Does the Unfinished Business Rule apply to Hourly Rate Matters in the District of Columbia?**

   **B. May the Trustee recover under the fraudulent transfer laws profits on Howrey Unfinished Business that was handled by former partners of Debtor who left Debtor prior to its dissolution?**

   **C. May the Trustee recover under the fraudulent transfer laws profits on Howrey Unfinished Business that was acquired from former partners of Debtor who left as of or after its dissolution?**

   **D. May the Trustee recover profits on Howrey Unfinished Business by an Accounting and Turnover count under 11 U.S.C. § 542?**

   **E. May the Trustee amend the complaints to proceed against defendants with respect to Howrey Unfinished Business that was handled by former partners of Debtor who left Debtor prior to its dissolution?**

III. FACTS[3]

   Debtor, then known as Howrey Simon Arnold & White, LLP, adopted a partnership agreement in 2000. Although originally formed as a general partnership, Debtor thereafter operated as a limited liability partnership under the D.C. Uniform Partnership

_____

   [3] For purposes of motion to dismiss the court treats all relevant facts in the Trustee's complaints as true.

-3-

Act of 1996, as amended ("D.C. RUPA").[4]

By early 2010, Debtor was insolvent or inadequately capitalized. On March 4, 2011, Debtor's management scheduled a vote for dissolution and five days later Debtor's partners voted to dissolve under D.C. RUPA, effective March 15, 2011. Also on March 4, 2011, management informed the partners about a proposed amendment to Debtor's partnership agreement to be executed concurrently with dissolution. Debtor's partners were urged to execute a Jewel Waiver, absent which they would have had a duty to account to Debtor for profits earned on the Howrey Unfinished Business.[5]

The actual Jewel Waiver adopted by Debtor and its partners on March 9, 2011, is found in Amendment No. 3 to Debtor's Partnership Agreement that added a new paragraph 19.3. That paragraph provides, in part:

> 19.3 <u>No Unfinished Business Following Dissolution</u>. In the event of dissolution of the Partnership (as set forth in Paragraph 17.3 above), neither the Partners nor the Partnership shall have any claim or entitlement to clients, cases or matters ongoing at the time of dissolution other than the entitlement for collections of amounts due for work performed by the Partners and

---

[4] D.C. RUPA was amended in July, 2011, and again in 2013, (effective March 5, 2013) to redesignate section numbers; there were no substantive changes. Since events relevant to the issues before the court occurred before that date, the prior section numbers will be used in this Memorandum Decision.

[5] As this court has described in *Brobeck* and multiple *Heller* decisions, a Jewel Waiver releases the claims of a dissolving partnership and its partners to profits arising from unfinished business. *Brobeck*, 408 B.R. at 327; *see also Heller Ehrman LLP v. Arnold & Porter LLP (In re Heller Ehrman LLP)*, 2011 WL 1539796 (Bankr. N.D. Cal. Apr. 22, 2011) ("*Heller I*"); *Heller Ehrman LLP v. Jones Day (In re Heller Ehrman LLP)*, 2013 WL 951706 (Bankr. N.D. Cal. Mar. 11, 2013) ("*Heller II*"); and *Heller Ehrman LLP v. Jones Day (In re Heller Ehrman LLP)*, 2014 WL 323068 (Bankr. N.D. Cal. Jan. 28, 2014) ("*Heller III*").

-4-

Case: 13-03056   Doc# 36   Filed: 02/07/14   Entered: 02/07/14 15:58:49   Page 4 of 27

other Partnership personnel on behalf of the Partnership prior to the earlier of their respective departure dates from the Partnership or the date of dissolution of the Partnership. The provisions of this Paragraph 19.3 are intended to expressly waive, opt out of and be in lieu of any rights any Partner or the Partnership may have to 'unfinished business' of the Partnership, as that term is defined in *Jewel v Boxer*, 156 Cal. App. 3d 171 (Cal. Dist. Ct. App. 1984), or as otherwise might be provided in the absence of this provision through interpretation or application of the LLP Act.

Some partners of Debtor left before March 4, 2011, and joined five of the six defendants presently before the court; more left after dissolution and joined the sixth defendant and two of the other five.[6]

The complaints do not allege specifics regarding the matters of Howrey Unfinished Business defendants completed, nor profits they realized on that Howrey Unfinished Business. Thus, the principal questions presented by the present motions are (1) whether under D.C. law, the Unfinished Business Rule applies to hourly rate work, and (2) whether defendants can be held liable as subsequent transferees under 11 U.S.C. § 550 based upon Howrey Unfinished Business acquired from partners of Debtor who left prior to the Jewel Waiver. As set forth below, the court believes

---

[6] The strategy of the Trustee in this law firm bankruptcy is somewhat different from that of the trustee in *Brobeck* and the liquidating debtor in *Heller*. In those cases, the fraudulent transfer actions were predicated on the fact that members of those firms left as of dissolution, which occurred on or after the date of the respective Jewel Waiver. Here, though, Trustee is seeking recovery of profits on business brought to some of the defendants *prior* to adoption of the Jewel Waiver. This court has determined that the Jewel Waivers in *Brobeck* and *Heller* were fraudulent transfers. *Brobeck*, 408 B.R. at 338-341; *Heller II,* 2013 WL 951706; and *Heller III,* 2014 WL 323068. Whether or not the Jewel Waiver in this case was a fraudulent transfer depends upon the application of D.C. law, discussed *infra*. Whether defendants can be held liable under the fraudulent transfer laws on account of Howrey Unfinished Business they acquired prior to dissolution is a matter of first impression for this court.

-5-

that the Unfinished Business Rule does apply to hourly rate
matters.  With respect to the second issue, defendants contend
that, as to matters transferred after the date of dissolution,
they were not initial or subsequent transferees of Debtor's
property and that Debtor's estate has no interest in the profits
earned on Howrey Unfinished Business.  The court has already
addressed those issues in *Brobeck*, *Heller I* and *Heller II.*
*Brobeck*, 408 B.R. at 338-341; *Heller I,* 2011 WL 1539796; Heller
*II,* 2013 WL 951706; and *Heller III,* 2014 WL 323068.  The result
here is the same.

IV.  DISCUSSION

    **A.    The Unfinished Business Rule Applies to Hourly Rate
Matters in the District of Columbia.**

        1.  D.C. Law

    In deciding defendants' motions, this court must follow
"state law as announced by the highest court of the [s]tate."
*C.I.R. v. Bosch's Estate*, 387 U.S. 456, 465 (1967); *accord*
*Vacation Vill., Inc. v. Clark County, Nev.*, 497 F.3d 902, 915 (9th
Cir. 2007).  This court cannot certify matters to the District of
Columbia Court of Appeals, even when a party (defendants here)
contends that the governing law is unsettled.[7]  That being the
case, this court's duty is to apply the law as it finds it.  Here,

---

[7] The District of Columbia Court of Appeals may answer
questions of law certified to it by the Supreme Court of the
United States, a court of appeals of the United States, or the
highest appellate court of any state, if there are involved in any
proceeding before any such certifying court questions of D.C. law
which may be determinative of the cause pending in such certifying
court and as to which it appears to the certifying court there is
no controlling precedent in the decisions of the District of
Columbia Court of Appeals.  D.C. Code § 11-723(a).

-6-

with the District of Columbia Court of Appeals having issued two significant decisions, and the United States District Court for the District of Columbia having issued another, this court's task is straightforward and the result is settled, notwithstanding defendants' argument to the contrary. Further, sound policies support the result: the Unfinished Business Rule applies to hourly rate matters in D.C.

Defendants argue that the Unfinished Business Rule applies in D.C. only as to contingency fee matters. Trustee, quite obviously, relies on the trilogy of D.C. cases that support application of the Unfinished Business Rule to matters handled on an hourly basis. Those cases, read together, are decisive. *See Beckman v. Farmer*, 579 A.2d 618 (App. D.C. 1990), *Young v. Delaney*, 647 A.2d 784 (App. D.C. 1994), and *Robinson v. Nussbaum*, 11 F. Supp. 2d 1 (D.D.C. 1997).

While *Beckman* involved contingency fees, the court was unequivocal in its statement that the fiduciary obligations of partners runs throughout the liquidation to the conclusion of the winding up, and applies to "any transaction connected with the conduct, or liquidation of the partnership. . . ." *Beckman*, 579 A.2d at 636. Despite defendants' desire that the court read *Beckman* narrowly, that court's direction is clear that "*all* work performed on partnership business unfinished at the date of dissolution ... was done for the benefit of the dissolved partnership." *Id.* at 639 (emphasis added). Citing *Jewel* (among

-7-

other state court cases),[8] the *Beckman* court observed that "pending cases are uncompleted transactions requiring winding up . . . and are therefore assets of the partnership subject to post-dissolution distribution." *Id.* at 636. "It follows that any profits from the completion of such unfinished business inure to the partnership's benefit, even if received after dissolution." *Id.*

The *Beckman* court also rejected the argument that application of the Unfinished Business Rule would impair lawyer mobility:

> The duty to wind up partnership business does not disable the former partners in a law firm from accepting employment from former clients of the dissolved partnership, provided the new employment does not relate to work in progress at the time of dissolution.

579 A.2d at 638.

Finally, the *Beckman* court held that the Unfinished Business Rule "is a creature of statute and attempts by courts to evade it are inappropriate," especially where partners could have "entered a partnership agreement which could have assured" the doctrine did not apply unless the firm and its partners so desired. *Id.* at 640 (citing *Jewel*, 156 Cal. App. 3d at 180).

Four years after deciding *Beckman*, the District of Columbia Court of Appeals again held that the Unfinished Business Rule applies to law firms. *Young v. Delaney*, 647 A.2d at 784. Holding

---

[8] For example, *Beckman* relied on five other state court decisions affirming the Unfinished Business Rule. *See Ellerby v. Speizer*, 485 N.E.2d 413 (Ill. App. Ct. 1985); *Rosenfeld, Meyer & Susman v. Cohen*, 146 Cal. App. 3d 200 (1983); *Resnick v. Kaplan*, 434 A.2d 582 (Md. 1981); *In re Mondale & Johnson*, 437 P.2d 636 (Mont. 1968); and *Frates v. Nichols*, 167 So. 2d 77 (Fla. Dist. Ct. App. 1964).

-8-

that a fact issue (whether partners had entered into a
profit-sharing agreement) should have precluded the trial court's
summary judgment, the court held that "'[p]ending cases are
uncompleted transactions requiring winding up after dissolution,
and are therefore assets of the partnership subject to
post-dissolution distribution.'" *Id.* at 792, quoting *Beckman*, 579
A.2d at 636. "Profits derived from the completion of legal cases
or uncompleted transactions after dissolution of a law
partnership are assets of the partnership, subject to distribution
after dissolution. Under the Uniform Partnership Act, these fees
are shared on dissolution in accordance with the rights of the
partners in fees in the former partnership." *Young v. Delaney*,
647 A.2d at 789.

The D.C. federal district court has likewise adopted the
reasoning of *Beckman*. In *Robinson v. Nussbaum*, 11 F. Supp. 2d at
5-6, one partner of a dissolved law firm filed a counterclaim
against his former partners' new law firm, seeking a share of
"hourly fees earned by [the new firm] which stem from client
matters which were pending but uncompleted at the time of
dissolution." *Id.* at 5. The district court granted summary
judgment in his favor, holding:

> The Partnership Act, as interpreted in *Beckman*, requires
> that former partners share *all* profits earned from
> completing client matters that were pending at the time
> of dissolution. As explained below, how the firm's
> clients were billed – either at an hourly rate or on a
> contingency fee basis – does not change the status of
> their work as partnership property.

*Id.* (emphasis in original).

The counter-defendants in *Robinson* argued that "being forced
to share their profits with a former partner who is no longer

-9-

contributing his time or expertise to the case" violated principles of fairness. *Id.* at 6. While the court acknowledged that applying the Unfinished Business Rule to hourly matters would "appear unfair," it concluded these concerns did not warrant confining the rule to contingent fee cases because (1) partners "are free (indeed encouraged)" to resolve unfinished business disputes through written partnership agreements; (2) the Unfinished Business Rule does not apply to new matters brought into the new firm after dissolution of the old firm; and (3) if applied to all former partners, the rule is equitable. *Id.* at 6.

## 2. Persuasive Analyses by Other Courts

This court is also impressed by the policy arguments that the District Court in New York applied to a similar question of whether hourly fee matters are subject to the Unfinished Business Rule in New York. The analytic steps taken by the court there are a perfect proxy for analyzing D.C. law here. In *Development Specialists, Inc. v. Akin Gump Strauss Hauer & Feld LLP* (*In re Coudert Brothers LLP*), 480 B.R. 145 (S.D.N.Y. 2012), ("Coudert"), *leave to appeal granted,* 2012 WL 10234967 (2d Cir. Dec. 18, 2012), and *questions certified to New York Court of Appeals,* Case No. 12-4916 (Dkt. 144) (2d. Cir. Jan. 24, 2014), the district court comprehensively analyzed whether legal business billed by the hour should be treated differently from contingent fee business, and thus be exempt from the Unfinished Business Rule.[9]

---

[9] *But see Geron v. Robinson & Cole LLP v. Seyfarth Shaw LLP* (*In re Thelen LLP*), 476 B.R. 732 (S.D.N.Y. 2012) (holding that under New York law, the Unfinished Business Rule does not apply to a dissolving law firm's pending hourly fee matters and that a partnership does not retain any property interest in outstanding hourly matters upon the firm's dissolution). Following appeal,

-10-

First, the court noted that under New York case law, executory contracts (i.e., agreements to provide legal services) involving contingency fee cases are law firm partnership assets. 480 B.R. at 163, also citing *Jewel, Beckman* and other cases. It then observed that other jurisdictions treated hourly fee matters as unfinished business. *Id., citing Official Comm. of Unsecured Creds v. Ashdale (In re Labrum & Doak, LLP),* 227 B.R. 391 (Bankr. E.D. Pa. 1998), *Rothman v. Dolin*, 20 Cal. App. 4th 755, 24 Cal. Rptr. 2d 571 (1993), as well as *Jewel* and *Brobeck.*

In that context, the court stated another overriding principle:

> The fact that New York courts must harmonize their rulings with those of other UPA jurisdictions by statute, Partnership Law § 4(4), is powerful reason to conclude that the New York Court of Appeals would reach the same result.

*Coudert*, 480 B.R. at 164.

The court rejected the argument that hourly rate matters are a series of "mini-contracts," each corresponding to a new billing

---

the Court of Appeals for the Second Circuit certified two questions to the New York Court of Appeals:

> [1] Under New York law, is a client matter that is billed on an hourly basis the property of a law firm, such that, upon dissolution and in related bankruptcy proceedings, the law firm is entitled to the profit earned on such matters as the "unfinished business" of the firm?

> [2] If so, how does New York law define a "client matter" for purposes of the unfinished business doctrine and what proportion of the profit derived from an ongoing hourly matter may the new law firm retain?

*Geron v. Seyfarth Shaw LLP (In re Thelen LLP)*, 736 F.3d 213 (2d Cir. 2013). The Court of Appeals of New York accepted both certified questions. *Geron v. Seyfarth Shaw LLP (In re Thelen LLP)*, --- N.E.2d ----, 2013 WL 6499301 (N.Y. Dec 12, 2013).

-11-

period.  In other words, defendants there contended that unfinished business effectively becomes finished each time a bill is sent to the client.  The *Coudert* court disagreed, noting that the defendants' approach conflated a law firm's rights against its clients and the rights of former partners among themselves.  Thus,

> [t]he unfinished business doctrine does not exist to assure that a law firm is paid for the value of work it has performed prior to dissolution.  It exists to settle accounts among partners upon dissolution of their business.  The fact that the client agreed to make payments for services rendered by giving his lawyer percentage of any winnings realized as opposed to paying him by the hour does not alter the fundamental proposition, codified in Partnership Law § 43, that every partner must account to former partners for profits realized from the use of what was, on the date of dissolution, a partnership asset.

*Id.* at 166.

The *Coudert* court also rejected the defendants' argument that application of the Unfinished Business Rule impacts negatively on the clients' choice of attorney, citing many of the cases upon which the District of Columbia Court of Appeals relied in *Beckman* (as discussed in footnote 8, above).  *Id.* at 168, *citing Jewel*, 156 Cal. App. 3d at 178; *Resnick*, 434 A.2d at 582; and *Ellerby*, 485 N.E.2d at 413. It also acknowledged (but rejected) contrary authority in *Welman v. Parker*, 328 S.W.3d 451 (Mo. App. S.D. 2010).  As discussed more fully in the next section, this court agrees.

### 3.   D.C. Ethical Rules Do Not Prohibit These Actions by the Trustee

Arguing that ethical and professional rules and opinions preclude the Trustee's claims, defendants point to the final sentence of Paragraph 19.3 of the Partnership Agreement, which says that the terms of that paragraph shall be deemed modified to

-12-

the extent required by any applicable ethical or professional
disciplinary rule.  Thus, they argue, the Jewel Waiver in the
beginning of that paragraph is voided because it violates D.C.
rules that govern lawyers in that jurisdiction.  As a preliminary
matter it is hard to imagine how skilled attorneys at Debtor would
agree in the first part of a paragraph to do something they
honestly believed was rendered void by laws incorporated in the
last sentence of the same paragraph.  Nevertheless, the court will
analyze whether such an apparent anomaly could possibly be the
case.

    Defendants attempt to avoid application of *Beckman*, *Young,*
and *Robinson v. Nussbaum*, discussed *supra*, by arguing that the
Unfinished Business Rule violates the D.C. Rules of Professional
Conduct ("RPC") and  certain D.C. ethics opinions.  This court has
already addressed and rejected similar arguments regarding the
California Rules of Professional Conduct. *Heller I,* 2011 WL
1539796 at \*5*; Heller II,* 2013 WL 951706 at \*5*.  In addition, the
Opinions of the D.C. Bar Legal Ethics Committee are not binding
and are simply advisory.  *See, e.g.*, *In re Kagan*, 351 F.3d 1157,
1164 n.7 (D.C. Cir. 2003) (acknowledging that  "[o]pinions of the
D.C. Bar Legal Ethics Committee" are "not binding on any court").
Even if they were binding, the ethics opinions cited by defendants
do not apply to the circumstances of this case, as discussed
*infra*.

    Defendants first argue that the RPCs trump RUPA.  In
particular, they contend that the Unfinished Business Rule runs
afoul of ethical rules requiring attorneys to be competent,
diligent, and zealous.  Defendants' cited cases do not involve the

-13-

application of the Unfinished Business Rule, however. Rather, most
involve acts by attorneys that could be considered malpractice.
In *In re Bernstein*, 707 A.2d 371, 376-77 (D.C. 1998), an attorney
neglected a client's matters because of personal circumstances,
but the Trustee has not alleged that any former Debtor matters
were neglected. In *In re Porter*, 628 S.E.2d 888 (S.C. 2006), a
title attorney admitted to commingling escrowed funds with his
operating account, but blamed the oversight on the death of a key
employee and admitted he did not properly supervise his staff.
*Maupin v. Dep't of Energy*, No. 03-1156(PLF), 2005 WL 3211883
(D.D.C. Nov. 18, 2005), and *In re Vialet*, 460 F. App'x 30 (2d Cir.
2012), involved attorneys who repeatedly missed deadlines in their
clients' matters. Finally, in *Missan v. Schoenfeld*, 445 N.Y.S.2d
856 (N.Y. Sup. Ct. 1981), the court dismissed one partner's breach
of contract claim that his former partners did not use their best
efforts to ensure firm clients succeeded to him as the former
partners retired. The complaints here allege no facts analogous
to any of these cases.

Defendants also contend that application of the Unfinished
Business Rule would violate D.C.'s RPCs governing fee sharing
agreements. The duty to account for profits on unfinished
business (a duty flowing between partners and their firm) and a
lawyer's fee sharing obligations (the duty to inform a client if
sharing fees with another firm) are distinct and do not offend
each other. *Heller I,* 2011 WL 1539796 at *5. Defendants have
offered no contrary D.C. authority suggesting that the Unfinished
Business Rule violates D.C.'s fee splitting rule, RPC 1.5(e).

-14-

Courts applying ethics rules similar to RPC 1.5(e) have
concluded that remitting profits from unfinished business does not
constitute impermissible fee splitting or sharing. *Labrum & Doak*,
227 B.R. at 413-14; (applying Pennsylvania law); *Surfin v. Hosier*,
896 F. Supp. 766, 769 (N.D. Ill. 1995) (applying Illinois law and
finding fee-splitting argument to be "unpersuasive"); *Hurwitz v.
Padden*, 581 N.W.2d 359, 363 (Minn. App. 1998) (applying Minnesota
law); *Ellerby*, 485 N.E.2d at 416 (concluding it was "perfectly
proper" for fees to be split among law partners). In *Labrum*, the
bankruptcy court held:

> [T]he former clients of the Debtor were free to be
> represented by any member of the dissolved partnership
> or by other attorneys of their choice. This right [of
> the former client] is *distinct from* and *does not
> conflict* with the rights and duties of the partners
> between themselves with respect to profits from
> unfinished partnership business since, once the fee is
> paid to an attorney, it is of no concern to the client
> how the fee is distributed among the attorney and his
> or her partners.

*Labrum*, 227 B.R. at 414 (emphasis supplied) (citing *Sufrin*, 896 F.
Supp. at 769).

Moreover, this court has twice rejected defendants' fee
splitting argument in the specific context of a fraudulent
transfer case. *See Heller II*, 2013 WL 951706, at *5 (concluding
"that there is not impermissible fee sharing if a bankruptcy
estate recovers profits earned on unfinished business by a
fraudulent transfer defendant") (citing *Heller I*, 2011 WL 1539796,
at *5).

Defendants cite two D.C. decisions that did not involve law
firm dissolution and the Unfinished Business Rule. Both decisions
involved a client's dispute with a lawyer, seeking either the

-15-

refund of an up-front fee (before a case begins) or payment on a
contingency fee (when a case is over) or the breach of a
contingency fee agreement. *In re Robert W. Mance III*, 980 A.2d
1196, 1202 (D.C. 2009) (flat fee for legal services not yet
performed remains client property); *King & King Chartered v.
Harbert, Intern., Inc.* 436 F. Supp. 2d 3, 12 (D. D.C. 2006) (a law
firm cannot sue a contingency fee client on a breach of contract
theory that the client took an action which prevented the
contingency from occurring). Those two cases do not change the
court's view.

Defendants also assert that the Unfinished Business Rule
interferes with a client's right to hire and fire counsel. But as
this court held in *Heller II,* the right of a client to choose its
lawyers is not implicated here. *Heller II*, 2013 WL 951706, at *5.
The Trustee is not challenging the clients' right to choose
counsel; rather he is "challenging the right of defendants to keep
profits (measured after allowing reasonable compensation) for
completing [Howrey [U]nfinished [B]usiness] for which [the
Debtor's former partners] (including those retained by defendants)
would have to account absent the Jewel Waiver." *Id*.

D.C.'s version of the rule (RPC 1.16) permitting a client to
terminate a lawyer at any time simply prevents a client from being
"forced to continue to employ an attorney with whom he no longer
retains this rapport [of trust and confidence]." *King & King*, 436
F. Supp. 2d at 12. None of Debtor's former clients was forced to
continue employing the firm. The clients voluntarily selected the
former Debtor partners and defendants as their new counsel. This
change in counsel has given rise to potential liability for

-16-

profits on Howrey Unfinished Business but the clients' rights to
hire and fire counsel were not affected.

Defendants also contend that the Unfinished Business Rule
constitutes a restrictive covenant that impermissibly affects
lawyer mobility, citing D.C.'s RPC 5.6 prohibiting agreements
restricting a lawyer's right to practice. *See Neuman v. Akman*, 715
A.2d 127, 130–31 (D.C. 1998). RPC 5.6 is intended to

> protect lawyers, particularly young lawyers, from
> bargaining away their right to open their own offices
> after they end an association with a firm or other legal
> employer. It also protects future clients against
> having only a restricted pool of attorneys from which to
> choose.

*Id.* (citing 2 Geoffrey C. Hazard, Jr. & William Hodes, THE LAW OF
LAWYERING § 5.6:201, at 824 (2d ed. Supp. 1997)).

To violate RPC 5.6, a restriction on lawyer mobility must be
"linked to [the former lawyer's] decision to compete with the
firm." *Ashcraft & Gerel v. Coady*, 244 F.3d 948, 955 (D.C. Cir.
2001). Here, neither the Unfinished Business Rule (imposing a
duty to account on the law firm's former partners) nor Debtor's
Partnership Agreement (confirming that fiduciary duty) is a
restrictive covenant that violates RPC 5.6. As the District of
Columbia Court of Appeals found in *Beckman*, the Unfinished
Business Rule "does not disable the former partners in a law firm
from accepting employment from former clients of the dissolved
partnership." *Beckman,* 579 A.2d at 638. The former Debtor
partners are not restricted from competing with Debtor; Debtor is
no longer a competitor precisely because it has dissolved.
Unsurprisingly, courts have found lawyer mobility arguments made
under rules similar to RPC 5.6 "unimpress[ive]," and no prior law

-17-

firm dissolution case has concluded the Unfinished Business Rule was an impermissible restrictive covenant. *See Labrum*, 227 B.R. at 415 (rejecting application of MRPC 5.4 or 5.6(a) to unfinished business case); *Coudert*, 480 B.R. at 169-70 (rejecting application of New York Rule 5.6 to unfinished business case).

In the absence of D.C. cases holding that the Unfinished Business Rule violates ethical and professional rules, defendants cite by analogy several D.C. Ethics Opinions and an unpublished decision (*Shainis v. Baraff, Koerner & Hochberg, P.C.*, No. 93-2253 (D.D.C. July 18, 1994)). The court is not persuaded by this authority. *Shainis* held that a partnership agreement provision violated RPC 5.6 when a departing partner's deferred compensation was reduced because the departed partners competed for the former firm's clients. *Shainis*, No. 93-2253, at *7 (D.D.C. July 18, 1994). Here, Debtor and the defendants are not competing for clients, and the application of the duty to account is not contingent upon whether the former Debtor partners did compete with Debtor.

Similarly, the ethics opinions defendants cite are inapplicable to the Unfinished Business Rule. These opinions invalidated partnership agreements that: (1) imposed an "absolute eighteen month prohibition on [the departing lawyer's] representation" of the firm's clients at a new firm;[10] (2) restricted a lawyer "apparently for all time" from "actually

---

[10] *See* D.C. Bar Opinion No. 122 (Mar. 1983) (finding that five-year requirement of remitting fees to former firm violated fee-sharing provisions in DR 2-107(A)).

-18-

representing [the firm's clients] if they asked for assistance;"[11] and (c) discouraged a partner "from competing against the former firm, or even representing [the former firm's] clients at all" by forcing the attorney to forgo a return of capital for five years.[12] Paragraph 13.9 of Debtor's Partnership Agreement does not contain any language analogous to these provisions, and the Unfinished Business Rule does not prevent Debtor's former partners from accepting employment from the firm's former clients.

In contrast, a later D.C. Ethics Opinion recognized that "the simple existence of an economic cost to leave a firm" does not violate RPC 5.6. *See* D.C. Bar Op. 325 (Dec. 2004). Instead, the prior law firm must actually "restrict the rights of a lawyer to practice after termination of the relationship." *Id*. Therefore, especially in light of the holding in *Beckman* that the Unfinished Business Rule does not restrict a former partner's right to practice, the court rejects Defendants' lawyer mobility argument.

In sum, this court concludes that under D.C. law, the Unfinished Business Rule applies to contingency fee cases, hourly rate cases and any variations of those well-established concepts.

**B.   The Trustee may not recover under the fraudulent transfer laws profits on Howrey Unfinished Business that was handled by former partners of Debtor who left Debtor prior to its dissolution.**

Defendants argue that this court's *Heller II* and other cases, including *Coudert* and *Robinson v. Nussbaum*, supra, limit their analysis of unfinished business to matters that were pending at

_____

[11] *See* D.C. Bar Opinion No. 181 (Apr. 21, 1987) (explaining agreement also imposed a $150,000 liquidated damages if lawyer "interfere[d] with the business of the firm in any way").

[12] *See* D.C. Bar Opinion No. 241 (Sept. 21, 1993).

-19-

the time of the dissolution of the law firm in question.    In *Heller* and *Brobeck*, of course, the plaintiff made no attempt to recover from any law firm defendants except based upon a Jewel Waiver as fraudulent transfer theory.    The Jewel Waiver, quoted in part above, states that neither the partners nor the Debtor "shall have any claim or entitlement to clients, cases or matters <u>ongoing at the time of dissolution</u>...." (Emphasis added.)    And in *Coudert* and *Robinson*, there is no fraudulent transfer analysis at all.

With the Trustee's claims framed as they are now the definition of "unfinished business" need not be limited to matters pending as of dissolution.    In *Brobeck* and *Heller* there was no need to define "unfinished business" otherwise.    Here there is no reason to limit the definition of Howrey Unfinished Business to matters pending as of dissolution.    In context, therefore, the definition has to extend to matters that were unfinished when partners of Debtor took them and joined defendants before the Jewel Waiver and dissolution.

The problem the court has is with the Trustee's underlying theory that he may recover under the fraudulent transfer laws profits on pre-dissolution matters that no longer belonged to Debtor on the date of the critical transfer.    Stated otherwise, when partners left Debtor prior to dissolution, taking Howrey Unfinished Business with them, that business itself and any future profits to be realized on it was no longer property of Debtor that could have been subsequently disposed of by the Jewel Waiver, a fraudulent transfer. *Heller II,* 2013 WL 951706 at *5; *Heller I,* 2011 WL 1539796 at *5;  *Brobeck, 408 B.R. at 338.* As stated in *Heller II*, 2013 WL 951706 at *12:

-20-

The Jewel Waiver transferred to Shareholders the right to complete unfinished business free of any burden to account back to Heller for profits made on that business.

The obvious conclusion, therefore, is without a transfer there can be no <u>fraudulent</u> transfer.

The Trustee makes a strained argument that partners who left Debtor prior to dissolution were still partners for purposes of his theory of the case. The reasoning is that those partners who left Debtor continued to be partners because of the operation of Paragraph 16.6 of the Partnership Agreement. That provision reaches back 180 days prior to dissolution to rescind a previously departed partner's rights "for purposes of receiving benefits pursuant to [the Partnership Agreement] but instead [such partner] shall be deemed to be a continuing partner of this Partnership <u>for purposes of distribution pursuant to Paragraph 16.5</u> hereof." (Emphasis added.)

Paragraph 16.5 deals with the liquidation of Debtor and sets forth how Debtor's partners will share in the net proceeds of that liquidation, after payments of debts. The relation back provisions of Paragraph 16.6 are very narrow, have no applicability here, and by no means can be construed to say that former partners were still partners just because their net distribution was to be adjusted if a liquidation occurred within 180 days of their departure. Certainly, no reasonable interpretation of that paragraph is that pre-dissolution departing partners were partners for purposes of the Unfinished Business Rule.

Trustee argues that under D.C.RUPA § 33-106.03(b)(3), a pre-dissolution departing partner must account for profits with regard

-21-

to matters arising and events occurring before the partner's disassociation. That is the law, but that does not mean that a partner who is bound by that section continued to be a partner, and thus was a transferee of a later transfer that occurred as a Jewel Waiver (whether fraudulent or not).

Trustee also relies on *Buckley Towers Condominium, Inc. v. Katzman Garfinkel Rosenbaum, LLP,* 519 F. App'x 657 (11th Cir. 2013). That case and others may support an accounting claim in an amended complaint, but they do not support the Trustee's fraudulent transfer theory.[13]

The motions will be granted insofar as the complaints seek to recover from defendants based on Howrey Unfinished Business they acquired from former partners who left prior to the Jewel Waiver.

**C. The Trustee may recover under the fraudulent transfer laws profits on Howrey Unfinished Business that was acquired from former partners of Debtor who left as of or after its dissolution.**

In *Heller* I (on motions to dismiss) and *Heller II* (on motions for partial summary judgment), this court determined that Heller's unfinished business was property of Heller; that Heller was insolvent on the date of the Jewel Waiver; that no reasonably equivalent value was given for what was transferred to the Heller partners who were the beneficiaries of the Jewel Waiver and who later joined defendants; that the Jewel Waiver was a fraudulent transfer; that each defendant was an immediate transferee of the initial transferee Heller partners who received the right to complete the unfinished business without having to account for any

---

[13] Nor does the decision by counsel in *Heller* not to proceed against law firms based upon business acquired by them prior to dissolution and the Jewel Waiver have any relevance here.

-22-

profits, and thus those defendants came within the reach of 11 U.S.C. § 550(a)(2); and that none of the defendants took the unfinished business for value, thus depriving them of the safe harbor of 11 U.S.C. § 550(b)(1). *Heller I,* 2011 WL 1539796 at *4-5; Heller *II,* 2013 WL 951706 at *7-15.

Here the matters are at the pleading stage, as no evidence has been presented and neither side has sought summary or partial summary judgment. Nevertheless, the court's reasoning in those decisions apply with equal force to the complaints' claims for constructive or actual fraudulent transfer liability of defendants who were joined by one or more of Debtor's partners after the Jewel Waiver (Pillsbury Winthrop Shaw Pittman LLP, Haynes & Boone LLP and Jones Day LLP).

In Heller III defendants argued that as a matter of law, there could be no profit on unfinished business, and thus no fraudulent transfer liability because there fees and costs were per se reasonable. The court summarized and rejected that argument:

> Defendants' position is, in essence, that there are no net profits on the Unfinished Business which are recoverable by Heller. With some variation in how Defendants present their arguments and in how their several experts structure their analyses to reach their ultimate opinions, the court distills those theories down into a simple "No Profits" proposition that it categorically rejects. According to Defendants, the Unfinished Business profits equal revenue <u>less</u> compensation paid to shareholders/partners, <u>less</u> compensation paid to non-owner employees, <u>less</u> operating costs. Thus, they opine, there was no profit and thus, nothing for Heller to recover.

*Heller II*, 2014 WL 323068 at *6.

> As discussed in more detail later, the court rejects Defendants' contention that the entirety of the fees received by them with respect to Heller's

-23-

> Unfinished Business constitutes, as a matter of law, "reasonable compensation" which they are entitled to retain under RUPA. It also rejects their argument that the value of the Unfinished Business is minimal to non-existent because Heller would not have been able to complete the Unfinished Business following dissolution.

*Id.* at *2.

For the same reasons here the court rejects defendants' similar arguments. Accordingly, the motions will be denied insofar as they relate to claims for profits on the Howrey Unfinished Business acquired from Debtor's partners who joined defendants after the Jewel Waiver.

**D. The Trustee May Not Recover Profits on Howrey Unfinished Business on the Accounting and Turnover count under 11 U.S.C. § 542.**

Trustee's Count V seeks an accounting and turnover pursuant to 11 U.S.C. § 542. As stated in the discussion, supra, on the date of the Jewel Waiver the Howrey Unfinished Business that had already been taken by previously departed partners did not belong to Debtor and thus there was no transfer. Trustee argues that under D.C. RUPA the profits from that Howrey Unfinished Business must be held in trust and therefore the Trustee may prosecute a turnover action under 11 U.S.C. § 542. That argument assumes the conclusion the Trustee desires. If, for example, a client of Debtor had paid for services rendered by it prior to the departure of the responsible partner, and that payment had been held by one of defendants, turnover might be an appropriate remedy. But whether or not there are any profits to be recovered cannot be presumed to be property of the estate, at least at the stage of the pleading.

Trustee seems to recognize this analysis in his opposition to

-24-

defendants' motions because he does not emphasize the section 542 turnover argument that is set forth in the seven short paragraphs of Count V. While it may well be that Trustee can make a case against defendants based upon pre-dissolution partners who joined them and completed Howrey Unfinished Business that was not concluded as of Debtor's dissolution, much like the theory of the case in *Coudert*, supra, the current state of the pleadings is insufficient. The motions will be granted as to Count V.

      **E.**    **The Trustee May Amend the Complaints to Seek to Recover Profits on Howrey Unfinished Business under Theories Other than Fraudulent Transfer Laws.**

No citation or extended discussion is necessary for the fundamental notion that a complaint may be amended unless there is no plausible theory on which the plaintiff may recover. Here the court is rejecting the Trustee's fraudulent transfer theory where there was no transfer, but that is not the end of the matter for defendants other than Haynes & Boone LLP (to whom no Debtor partners went before the Jewel Waiver). Those defendants were joined by former Debtor partners prior to the Jewel Waiver and the Trustee should not be denied an opportunity to pursue them for profits on Howrey Unfinished Business on an accounting theory. This is the approach taken by the plaintiff in *Coudert,* 480 B.R. at 160-61. In *Heller III* this court observed:

> While Heller is not pursuing Defendants under a direct accounting theory, it is pursuing them as subsequent transferees of the avoidable transfers. Consequently, the court must focus on the non-bankruptcy law rights that were surrendered by Heller when the Jewel Waiver was executed, *viz.*, the right to recover profits under RUPA and California state law. Liability under the fraudulent transfer law here or under well-established partnership principles as considered in *Coudert*, are two sides of the same coin.

-25-

*Heller III*, 2014 WL 323068 at *3.

The court agrees with the Trustee that a duty to account extends to partners who left Debtor before the Jewel Waiver. That duty is found in DC RUPA § 33-106.03(b)(3) and applies "only with regard to <u>matters arising</u> and events occurring before the partner's dissociation..." (Emphasis added.)[14] It does not apply to new business originated even from a preexisting client, but does apply to Howrey Unfinished Business - <u>matters arising</u> - that was completed by one of the defendants.

*Buckley Towers* is in accord:

> Moreover, RUPA still supports the premise that partners are not entitled to additional remuneration during a partner's dissociation. In fact, the example provided in the uniform commentary clearly supports the continuation of the *Frates* rule by stating that dissociated partners must account to the partnership for any fees from ongoing client transactions that are received after dissociation.

*Buckley Towers Condominium, Inc. v. Katzman Garfinkel Rosenbaum, LLP, 519 Fed. App'x. 657, 662(11th Cir. 2013).* .

The court acknowledges that in *Heller II* "unfinished business" was described as that which existed at the time of dissolution. *Heller II*, 2013 WL 951706 at *4. As noted previously, the plaintiff there did not seek to recover profits on business that left the firm prior to dissolution under any theory. For purposes of the Trustee's theory here, the definition of Howrey Unfinished Business is not limited to that which existed on

---

[14] The court expressly rejects one of defendants' argument that an Author's Comment regarding this D.C. RUPA provision prevails over the plain words of the statute and the Official Comment to it, and there is merely a duty to account for fees earned prior to dissociation.

-26-

the date of the Jewel Waiver or dissolution.

The Trustee will be given leave to amend the complaints to state claims against Defendants other than under the fraudulent transfer theories.

## V. CONCLUSION

Counsel for the Trustee should prepare and circulate among defendants forms of orders granting and denying the various motions, consistent with this Memorandum Decision as applied to the circumstances of each defendant. Those orders should permit leave to amend the complaint to seek an accounting (not a fraudulent transfer recovery) based upon Howrey Unfinished Business that went with partners who left Debtor prior to dissolution. The amended complaints should be filed and served no later than thirty days following entry of the specific orders granting the particular defendant's motion.

The court will hold a continued status conference in these six adversary proceedings on March 25, 2014, at 9:30 a.m.

**END OF MEMORANDUM DECISION**

Case: 13-03056    Doc# 36    Filed: 02/07/14    Entered: 02/07/14 15:58:49    Page 27 of 27